UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

LASZERRICK T. GRIFFIN,

        Defendant.

Case No. 18-cr-100-pp

---

**ORDER ADOPTING JUDGE DUFFIN'S RECOMMENDATION (DKT. NO. 26) AND DENYING MOTION TO SUPPRESS (DKT. NO. 13)**

---

The grand jury returned an indictment charging the defendant with being a felon in possession of a firearm, dkt. no. 1, and the defendant moved to suppress all evidence from the traffic stop that led to his arrest, dkt. no. 13. The defendant argues that he committed no traffic violation warranting a seizure, and that the officers failed to activate their body cameras until "well after the traffic stop had been effected." Dkt. No. 13 at 1. Magistrate Judge Duffin conducted an evidentiary hearing during which Milwaukee Police Officers Anthony Milone and Zachary Kwiatowski testified. Dkt. No. 21. On August 7, 2018, Judge Duffin issued a report, recommending that this court deny the motion. Dkt. No. 26. The defendant objected (and asked this court to conduct a *de novo* evidentiary hearing), dkt. no. 27, and the government responded, dkt. no. 29. This court declines to conduct a second evidentiary hearing and denies the motion to suppress.

1

I.  **Background**

   A.  <u>Evidence from the Suppression Hearing Before Judge Duffin</u>

Milone testified at the evidentiary hearing that he has worked the late power shift (7 p.m. to 3 a.m.) for the past three years. Dkt. No. 21 at 6. Currently assigned to "violent crimes cars," Milone responds to "things like ShotSpotter, shots fired, subject with a gun, armed robbery calls as well as trying to be proactive in preventing those crimes." <u>Id.</u> Milone testified that he typically responds to calls, attempts traffic stops, conducts field interviews and talks with citizens about their neighborhoods. <u>Id.</u> He conducts his duties from a squad car, on patrol, and almost always has a partner. <u>Id.</u>

On March 23, 2018, Milone was driving a Ford Explorer squad car. <u>Id.</u> at 8. Officer Zachary Kwiatkowski accompanied Milone in the front passenger seat. <u>Id.</u> Milone wore his body camera, which activates when the user presses a button twice. <u>Id.</u> at 9-10. Once the user starts to record, the body camera rewinds thirty seconds but there is no audio—just video. <u>Id.</u> The Ford Explorers, which are newer vehicles, did not have dash cameras in them at that time. <u>Id.</u> at 10-11.

Milone testified that on the night of March 23, he was traveling northbound on the 3100 block of North 28th Street (between West Chambers and West Burleigh). <u>Id.</u> at 12. As he approached the intersection of North 28th Street and Burleigh, Milone saw a red Mercury Sable traveling northbound. <u>Id.</u> Because he was stopped at the stop sign while waiting for traffic, Milone said, he saw the Sable "continuously . . . swerving left and right," and that he saw

2

this happen "numerous times"— "at least three full rotations of where it would swerve to the left for maybe a second, second and a half, swerve back to the right. Back and forth to the point where every time it swerved left it was on the wrong side of the road." Id. at 12, 15. This was happening in two-way traffic. Id. at 12. Milone testified that on at least one of these swerves, the Sable swerved "almost to the curb line on the other side of the street." Id. at 15. Milone estimated that he first noticed the Sable when he was about two houses away from the intersection and the Sable was a couple of houses north of Burleigh. Id. at 13-14. He did not recall seeing oncoming traffic. Id. at 17.

Milone could not recall how much time passed before he caught up to the Sable, but the defendant pulled over in front of 3268 North 28th Street (between West Auer and West Concordia). Id. at 17-18. Milone thought it took "only like a second or two to catch up to [the Sable]" and to activate the squad's red and blue emergency lights. Id. Milone and Kwiatoski started to step out of the squad, and Milone testified that he saw the driver start "digging around his right side with his right arm. He was moving back and forth on his right side." Id. at 19. Milone made contact with the driver for twenty to thirty seconds; the driver identified himself by his ID. Id. at 20. As they walked back to the squad, Kwiatkowski informed Milone that he saw an open bottle from the passenger side. Id. Milone ran a check on the driver's license and discovered that the defendant was on probation or parole for being a felon in possession of a firearm. Id. at 21. Based on the fact that the defendant had been digging on the right side, the "open intoxicant," and the fact that the license check had

3

revealed that the defendant was "on paper for felon in possession of a firearm," Milone decided to ask the defendant to step out of the car. Id. It took about thirty seconds for the two officers to return to the defendant's car. Id.

Milone asked the defendant to step out of his car; the defendant did not do so at first, and Milone had to ask him about four times to step out of the car. Id. at 22. The defendant "kept asking" why Milone was asking him to get out of the car. Id. Based on his training, Milone knew this meant something was wrong. Id. Milone ended up opening the driver's-side door, because he was trying to keep the car from fleeing (an event he said had occurred "numerous" times to him). Id. To make sure the defendant didn't reach for anything inside the car, Milone "had control" of the defendant's left arm and Kwiatkowski controlled the defendant's right arm. Id. at 23. Milone asked the defendant whether he had any guns on him; the defendant responded "yes." Id.

At that point, Milone conducted a pat-down and felt a firearm on the defendant's right side. Id. Milone retrieved a silver-over-black, .9-mm. HiPoint, semi-automatic pistol. Id. Because the defendant was a convicted felon, Milone took the defendant into custody and placed him in handcuffs. Id. The officers put the defendant in the back of the squad car and called for a photo car (someone to take photos of the vehicle and the "open intoxicant," a bottle of Remy Martin cognac). Id.

Milone wrote the defendant up for "operating left of center line." Id. at 24. Although there was no painted line on North 28th Street, Milone testified that there was a center line crack put there by whoever designed the road, running

4

down the entire block and dividing southbound and northbound traffic. Id. Milone also testified that the "statute, when you look at the statute[1] it says, 'Vehicles to be driven on the right side of the roadway.'" Id. Milone explained that when an officer enters the relevant Wisconsin statute in the TraCS[2] system, the system pulls up "driver operating left of the center line" or language to that effect. Id. at 24-25. Kwiatkowki issued the defendant a citation. Id. at 25.

On cross-examination, Milone conceded that most of his duties did not involve traffic violations and that he had discretion in deciding whom to pull over. Id. at 27. Milone testified that he thought the defendant may have been joyriding, because Milone had seen numerous stolen cars in the past where the driver swerved back and forth in the road. Id. at 28. Milone said that he did not see the defendant strike any other vehicles; he did not write down the word "reckless;" he did not believe the defendant was intoxicated and did not administer a breathalyzer, field sobriety test or blood test; and he did not cite the defendant for reckless driving. Id. at 34.

Milone testified that he had been issued the body camera in July 2016, and that he'd been trained to use it. Id. at 36. He testified that he was supposed to activate the camera when making citizen contacts, arrests, traffic

---

[1] Milone did not identify the statute to which he was referring.

[2] "TraCS" stands for "Traffic and Criminal Software," an automated reporting system for law enforcement. https://wisconsindot.gov/Pages/safety/enforcement/agencies/tracs/default.aspx. The court reporter spelled the acronym "TRAX." Dkt. No. 21 at 24.

stops and giving chase to suspects. Id. at 37. Both Milone and Kwiatkowski testified that they had turned on their body cameras *after* they stopped the Sable. Id. at 29, 37. According to Milone, he didn't activate the camera until after the stop because he had seen the defendant digging around on the right side, and Milone wanted to make contact with him right away "to make sure he could not retrieve or discard a firearm or any other type of weapon." Id. at 37. The court received the screen shots from the body cameras into evidence as exhibits One through Four. Dkt. No. 20-1.

Kwiatkoski also testified at the hearing. Dkt. No. 21 at 42. He stated that he had worked for the Milwaukee Police Department for six years. Id. at 43. Like Milone, he worked in "violent crimes car," responding to calls of shots fired, SpotShotters, armed robbery and subjects with guns. Id. On the evening of March 23, 2018, Kwiatkowski was patrolling District 5 with Milone. Id. at 44. Kwiatkowski sat in the passenger seat, and wore a recording device. Id. at 45. As they approached the intersection of 28th and Burleigh, traveling northbound, Kwiatkowski saw a Mercury traveling northbound, swerving left and right between the southbound and northbound lanes. Id. at 46. When Kwiatkowski first saw the defendant's vehicle, it was a little less than mid-block ahead of him. Id. at 47. He testified that there were no cars parked in such a way that the Mercury would have had to swerve to go around them, and no one getting out of a car. Id. at 48-49.

Kwiatkowski activated the lights, and the defendant pulled over at 3268 North 28th. Id. at 49. Milone approached the driver's side, and Kwiatkowski

6

looked in the vehicle with a flashlight. Id. at 50. As Kwiatkowski looked in the vehicle, he observed an "open intoxicant"—he said, "I think I thought it was like a wine bottle"—but at the hearing, thought he recalled that it was cognac. Id. Kwiatkowski told Milone of his observations once the officers returned to the squad. Id. Kwiatkowski saw the defendant reaching down with his right hand, so Kwiatkowski activated the body camera sometime after they spoke with the defendant and as they walked back to the squad to run the defendant's name. Id. at 51.

Kwiatkowksi confirmed that Exhibit Five was the citation he had issued to the defendant on the day of the traffic stop. Id. at 52. He testified that he had generated the ticket back at the district. Id. at 53. He testified, as had Milone, that the TraCS system automatically generated the "operating left of the center lane" language. Id. Kwiatkowki confirmed that there was no center lane on North 28th Street, but testified that one couldn't travel north in the southbound lane—drivers still had to stay on the correct side of the road, painted line or not. Id. at 54.

On cross-examination, Kwitakowski stated that he had not prepared a report of the stop, and confirmed that although the Mercury had been weaving from lane to lane, he had not seen any traffic traveling southbound. Id. at 55. The defendant's weaving hadn't obstructed any traffic. Id. at 56. He testified that there were vehicles parked on both sides of the street. Id. Kwiatkowski recalled that the defendant "was completely and as close as he [could be] to the southbound lane without hitting any vehicles, and then back into the

7

northbound lane, back into the southbound, back into the northbound, without hitting any vehicles as far as he [could] go." Id. at 57. The body camera did not catch any of the swerving. Id. at 58. Kwiatkowski activated the camera after he'd had contact with the defendant, once he felt it was safe to do so. Id.

At the time he filed the motion to suppress, the defendant filed as attachments to the motion two Google maps photos showing street views of the 3200 block of North 28th Street in Milwaukee. Dkt. Nos. 13-1 and 13-2. The photos are not authenticated; they show cars (in the daylight) parked on both sides of the street, with no center line. Under the photos, the "image capture" identifies October 2015 but does not identify a specific date or time. Id.

### B. Judge Duffin's Recommendation

On August 7, 2018, Judge Duffin recommended that this court deny the motion to suppress. Dkt. No. 26. He began by analyzing the city ordinance listed on the citation Kwiatkowski had given the defendant. He explained that Milwaukee City Ordinance 101-1-02 does nothing more than adopt the state of Wisconsin's traffic laws. Id. at 3. So Judge Duffin turned to the relevant Wisconsin traffic law, Wis. Stat. §346.05. Id. Subsection (1) of that statute states, "Upon all roadways of sufficient width the operator of a vehicle shall drive on the right half of the roadway and in the right-hand lane of a 3-lane highway . . . ." Id. at 3. There are exceptions; for example, §346.05(1)(d) provides an exception when the driver is "overtaking and passing pedestrians, animals or obstructions on the right half of the roadway." Judge Duffin pointed out that a driver violates this statute even if the center line is unpainted and

8

even if his entire vehicle does not cross the midpoint of the roadway. Dkt. No. 36 at 4 (citing State v. Popke, 317 Wis. 2d 118 (2009)). Judge Duffin noted that if he concluded that the defendant had driven the way Milone and Kwiatkowski had described, the officers would have had a lawful reason to stop him. Id.

Judge Duffin next considered the defendant's argument urging him to reject the officers' testimony because their body cameras had not captured the swerving driving they'd described. Id. He acknowledged that the Milwaukee Police Department policy instructed officers to "make every effort to activate their [body worn camera] for all investigative or enforcement contacts including, but not limited to ... [v]ehicle stops . . . ." Id. (citing Dkt. No. 23-1 at 4). He countered, however, with the fact that that same policy stated that "officer safety is paramount. Members with a [body worn camera] who arrive on a scene or engage in an enforcement contact must start recording as soon as it is safe and practical to do so." Id. Milone and Kwiatkowski, Judge Duffin noted, had testified that that is what they had done—they had activated their cameras as soon as it was safe and practical to do so. Id. While agreeing that the officers *could have* activated their body cameras the minute they saw the defendant's car, Judge Duffin reasoned that nothing in the policy required them to do so. Id. He also held that even if department policy had required the officers to activate the cameras immediately upon seeing the car, non-compliance with department policy, without more, did not justify suppression. Id. at 4-5.

As to Milone's credibility, Judge Duffin acknowledged that, "counting this case, Milone has been involved in at least five arrests that have led to federal

9

prosecutions."³ Id. at 5. He listed the five cases: "*United States v. Jones*, 889 F.3d 876 (7th Cir. 2018); *United States v. Bell*, No. 17-cr-90-pp, 2018 U.S. Dist. LEXIS 71966 (E.D. Wis. Apr. 30, 2018) (order adopting magistrate judge recommendation); *United States v. Bell*, No. 17-CR-90, 2017 U.S. Dist. LEXIS 220558 (E.D. Wis. Dec. 29, 2017) (report and recommendation); *United States v. Brantley*, No. 16-CR-188, 2017 U.S. Dist. LEXIS 220618 (E.D. Wis. Mar. 13, 2017 (report and recommendation); *United States v. Richmond*, No. 16-cr-197-pp, 2017 U.S. Dist. LEXIS 137801 (E.D. Wis. Aug. 28, 2017) (order adopting magistrate judge recommendation); *United States v. Richmond*, No. 16-CR-197-WED-PP, 2017 U.S. Dist. LEXIS 138817 (E.D. Wis. Apr. 6, 2017 (report and recommendation)." Id.

Judge Duffin explained that United States v. Brantley involved a case where Milone had not activated his body camera. Id. He recounted that after hearing Milone's testimony that, "over a distance of 80 yards and in the dark, [Milone] could see a person had a light complexion and was wearing black rimmed glasses," Magistrate Judge David Jones had concluded that Milone's testimony "'reflected an inaccurate recollection of the sequence of events.'" Id. (quoting Case No. 16-cr-188, Dkt. No. 33 at 12). Judge Duffin observed that Milone had not activated his body camera in the Jones case, either. Id. at 6 (citing Case No. 16-cr-179, Dkt. No. 54 at 68, 89-92). And he pointed out that in the Richmond case, Milone got his body camera prior to the arrest, but no

---

³ Judge Duffin did not find any record indicating that Kwiatkowski had been associated with any federal prosecutions. Dkt. No. 26 at 5.

footage from that camera had been admitted into evidence. Id. (citing No. 16-cr-197, Dkt. No. 33 at 13, 19). These three cases[4] caused Judge Duffin to observe, "[I]t appears Milone has a habit of not activating his body camera as soon as called for under the department's policy." Id.

Judge Duffin opined that it "certainly would have been preferable" if one of the officers had recorded the events in this defendant's case, with either a dash camera or a body camera. Id. at 7. He explained that recording serves everyone's interests, including the officers'—"[i]t protects them against specious attacks on their credibility." Id. But in this case, Judge Duffin concluded that there was no evidence to contradict Milone and Kwiatkowski's testimony about the defendant's swerving driving. Id. at 6. While he acknowledged that the lack of recording might "tip the balance in favor of a defendant's version of events" in a close case, Judge Duffin concluded that this case—where the officers' version of events was undisputed—was not "close." Id. He concluded that the absence of a recording, "standing alone, does not support discrediting unrefuted testimony." Id. at 7.

---

[4] Judge Duffin also mentioned that in the Bell case, the defense had challenged Milone's testimony regarding the defendant's unprovoked flight, because his account closely resembled accounts he'd provided in complaints in other cases. Dkt. No. 26 at 6 (citing No. 17-cr-90). That challenge was unsuccessful, and the fact that the court in Bell—this court, as it happens—found it notable that Milone had used the same language in several complaints does not render Milone's testimony incredible in every case.

11

## II. Analysis

### A. Standard of Review

Federal Rule of Criminal Procedure 59(b) governs dispositive motion practice initiated before magistrate judges. Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a dispositive motion. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate's recommendation, the district judge reviews *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or modify, in whole or in part, the findings or the recommendations made by the magistrate." 28 U.S.C. § 636(b)(1).

### B. Discussion

The Fourth Amendment protects the right to be free from unreasonable searches and seizures by the government. U.S. Const. Amend IV. As a result, whenever an officer decides to stop a vehicle, the stop must meet the reasonableness requirements of the Fourth Amendment. United States v. Rodriguez-Escalera, 884 F.3d 661, 667 (7th Cir. 2018) (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979)). A traffic stop does not violate the Fourth Amendment when the police officer has probable cause to believe the driver committed a traffic violation. United States v. Smith, 668 F.3d 427, 430 (7th Cir. 2012). Probable cause exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense. Whren v. United States, 517 U.S. 806 (1996). "Improper lane

usage provides a legitimate reason for an investigatory stop." United States v. Hernandez-Rivas, 513 F.3d 753, 759 (7th Cir. 2008)). The prosecution bears the burden of proving by a preponderance of the evidence that probable cause supports the warrantless stop. United States v. Garcia-Garcia, 633 F.3d 608, 612 (7th Cir. 2011).

Both officers testified that they observed the Mercury Sable swerving from left to right across the center of the road. Wis. Stat. §346.05 requires all "vehicles to be driven on the right side of the roadway," and there are no exceptions that apply here. There is no evidence to contradict the officers' testimony that the defendant crossed the midpoint of the road, swerving from curb to curb on the opposite sides. There is no evidence to contradict Milone's testimony that there were no cars parked in such a way that the defendant would have had to serve around them into the opposite lane, and no people getting out of their cars around which the defendant would have had to veer.

The defendant has urged both Judge Duffin and this court to disregard the officers' uncontradicted testimony, however, because although both officers were wearing body cameras, neither officer activated those cameras, and there is no footage to corroborate their testimony. The defendant implies that Milone's habit of failing to activate his body camera shows that his testimony is not credible, and implies that Milone avoids recording events that might demonstrate he did not have probable cause to arrest someone, or to stop someone. The court understands the defendant's concern. Milone has testified in this and other cases that he knows how to activate his camera. This is not

13

the first federal court case in which Milone has failed to activate his camera, or has activated it after relevant events occurred. And in this case, both officers testified that they had some time—perhaps as little as thirty seconds, but still time—to activate their cameras *before* the stop. Milone's history provides a basis for the defendant's implications.

In this case, however, while there is no body camera evidence to corroborate Milone's version of events, there *is* corroborating evidence. This is not a case where the court must rely solely on Milone's testimony to conclude that the officers had probable cause to stop the defendant. *Kwiatkowski* saw what Milone saw, and testified to it. The defendant has not demonstrated that *Kwiatkowski* has a history of failing to activate his body camera. There is no evidence to contradict *Kwiatkowski's* testimony that he didn't activate his camera right away because he had observed the defendant "digging around" with his hand near the car door, and was concerned about getting the defendant out of the car quickly. The defendant has not given the court a reason to discredit *Kwiatkowski's* testimony, and Kwiatkowski's testimony corroborates Milone's.

The defendant also labels both officers' testimony as "dubious and too convenient" because there was no painted center line on the road. Dkt. No. 23 at 1. The court does not see the need for a *de novo* evidentiary hearing[5] to

---

[5] Section 636(b)(1) of Title 28 calls for a *de novo* review of the *objection*, but does not require a *de novo* evidentiary hearing. United States v. Raddatz, 447 U.S. 667, 675 (1980); see also Jackson v. United States, 859 F.3d 495, 498 (7th Cir. 2017) (the Federal Magistrate Act does not require a district court to

reject this argument. The absence of a painted line does not make it impossible for a defendant to veer out of his lane, or for officers to figure out that he did so; if it did, §346.05(1) would be unenforceable on a good proportion of the roadways in Wisconsin. Wis. Stat. §346.05(1) does not require motorists to drive to the right of a painted line. It requires motorists to drive "on the right half of the roadway," and police officers—even civilian drivers—can see when someone has driven over into the other lane of traffic.

Both officers gave detailed testimony about seeing the defendant swerve close to the curb on the left-hand side of the road before swerving back right. The defendant's argument might be more persuasive if the officers had testified that he drifted momentarily to the left, but that was not their testimony. Both testified to seeing the defendant swerving back and forth from the right lane to the left, more than once.

Based on the uncontradicted testimony, and the fact that Kwiatkowski's testimony corroborates Milone's, the court will deny the motion to suppress.

## II.  CONCLUSION

The court **ADOPTS** Judge Duffin's report and recommendation. Dkt. No. 26. The court **DENIES** the defendant's motion to suppress. Dkt. No. 13.

The court's staff will contact the parties to set up a status/scheduling

---

hold a *de novo* hearing when accepting a magistrate judge's credibility findings).

conference.

Dated in Milwaukee, Wisconsin this 11th day of October, 2018.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**