UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No. 18-cr-100-pp

LASZERICK T. GRIFFIN,

Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO AMEND JUDGMENT (DKT. NO. 55).**

---

On May 8, 2018, the grand jury indicted the defendant with being a felon in possession of a firearm. Dkt. No. 1. At the time, the defendant was in state custody, serving a revocation sentence in Milwaukee County Circuit Court case no. 16CF1987. Dkt. No. 4 at 3. The government applied for a writ for his appearance in federal court, dkt. no. 3, and on May 24, 2018, the defendant appeared before Magistrate Judge Duffin for his arraignment and plea, dkt. no. 6. At the end of the hearing, defense counsel indicated that the defendant would seek release on bond when he finished serving the state sentence; Judge Duffin issued a federal detainer. Id. at 1-2.

In June 2018, when this court scheduled the final pretrial conference and the trial date, Magistrate Judge Joseph issued writs to Dodge Correctional Institution for the defendant to be produced for the pretrial conference and trial. Dkt. Nos. 10, 11.

On September 10, 2018, the defendant filed a motion asking the court to hold a detention hearing. Dkt. No. 32. He indicated that he was to complete his state sentence on September 25, 2018. Id. at 1. Magistrate Judge David E. Jones held that detention hearing on September 25, 2018. Dkt. No. 34. After hearing argument, Judge Jones ordered the defendant detained. Id. at 2. The defendant entered a guilty plea on November 20, 2018. Dkt. No. 39.

The presentence investigation report, filed prior to the sentencing hearing, indicated that the defendant had made his initial appearance on May 24, 2018 and then had been ordered returned to state custody. Dkt. No. 42 at 1. It indicated that the defendant had been detained in federal custody on September 25, 2018. Id.

Toward the end of the defendant's April 16, 2019 sentencing hearing, the following exchange occurred:

> THE COURT: I note that Mr. Griffin made his first appearance here on May 24th of last year. I think he was ordered to return to state custody and the presentence report indicated that he was officially detained federally on September 25th of 2018. But, Mr. Murray, I think you and Mr. Griffin had indicated that Mr. Griffin wasn't ever returned to state court.
>
> [DEFENSE COUNSEL]: Correct. That often is the practice even though a defendant is ordered to return to state custody, they are often kept in federal custody while their case remains pending based on marshal logistics. And that's what happened with Mr. Griffin, he remained in federal custody throughout since his initial appearance.
>
> THE COURT: Well, what I'm going to do, because I never quite know what the BOP—and [the probation officer] can tell me if he disagrees, but I never quite know how the BOP calculates these things. My proposal is to simply put in the judgment that Mr. Griffin should get credit for any time that he served in federal custody. If, Mr. Murray, you find out after Mr. Griffin gets in that they're doing something weird in terms of credit and you don't think it's correct,

> then you can always explore that at that point. But we just won't know till he gets in there, I don't think, how that's going to be calculated. Mr. Fetherston—
>
> [PROBATION OFFICER]: Judge, that's a reasonable option. What might be in question is the five months between May 24th and September 25th, whether or not the BOP will credit him. Even though he was in federal custody he also received credit for the state.
>
> THE COURT: Okay.
>
> [PROBATION OFFICER]: So the BOP will have to—[Indiscernible] if there is an issue [Indiscernible].
>
> THE COURT: Right. Well, and my fear is that if I say that he gets credit from May 24th of 2018, I've done that before and if the Bureau of Prisons doesn't agree they don't get it anyway. So what I would say is let's do it this way, let's see how that's calculated, and then if there's a problem, Mr. Griffin, you can let Mr. Murray know or whatever and we'll go from there.

Dkt. No. 51 at 28-29.

The defendant now asks the court to amend the judgment, reducing his sentence by four months. Dkt. No. 55. Referencing the above exchange, the defendant says that at sentencing, the court "discussed [the defendant's] prior custody status, confirmed that he remained at all times throughout this case in federal custody, and recommended that [the defendant] be credited for the time he spent in federal custody." Id. at 2. The plaintiff says that in imposing sentence, "it appears that the Court relied on [the defendant] being granted credit for all the time he spent in federal custody, including that time from May 24 through September 25," then quotes the above exchange. Id. He states that the excerpt from the transcript of the sentencing hearing "reflects that the Court intended for [the defendant] to receive credit from May 24, 2018, up to his sentencing." Id. at 3.

The plaintiff argues that the court's "intent" in this regard was "frustrated," because

> the FBPO ordinarily would not grant credit for time that was applied to another sentence under § 3585(b)(2). While [the defendant] was in federal custody from May 24 through September 24, 2018, his state sentence continued to run, so that time was applied to another sentence. But also problematic is the fact that the FBOP didn't know that [the defendant] remained in federal custody from May 24 to September 25 because that was not reflected in the revised PSR. The PSR did note that [the defendant] was *ordered* returned to state custody, but failed to note that [the defendant] was never actually returned to state custody, but instead sat in federal custody the whole time his case was pending. *See* PSR, p.1. So when the Court's judgment recommended credit for all time spent in federal custody, the FBOP didn't have full information because the fact that [the defendant] sat in federal custody from May 24 to September 25 remained absent from the PSR. Consequently, he was not granted credit for that time.

Id. at 3-4.

The defendant concedes that the time between May 24 and September 25 was applied to the defendant's state revocation sentence. Id. at 4. He argues, however, that "the Court knew this when it sentenced [the defendant], and nonetheless recommended that he be granted credit for those months spent in federal custody." Id. He says that the issue is a question of what the court intended at sentencing, speculating that perhaps the court intended to credit some of the defendant's state time toward his federal sentence, given that the court couldn't impose the federal time to run concurrently to the already-served state revocation sentence. Id. at 4, n.1. He concludes by asking the court to amend the judge to reduce his sentence by four months, "to account for the time that the Court recommended that he get credit for, but was not granted." Id. at 4-5.

The government objects, noting that if the court were to grant the defendant's request, he'd get credit against both his state revocation sentence *and* this federal sentence for the same period. Dkt. No. 57. It notes that the BOP calculated the defendant's federal credit from September 22, 2018—the day after he finished serving the state revocation sentence. Id. at 1. It also points the court to 18 U.S.C. §3585(b), which requires that a defendant get credit for any time he has spent "in official detention prior to the date the sentence commences . . . that has not been credited against another sentence." Id. at 2. Because the period from May 24, 2018 through September 21, 2018 was credited to another sentence—the defendant's state revocation sentence in Case No. 16CF1987—the government opposes the court applying credit for that same period to reduce his federal sentence. Id.

The court has conferred with the probation department. Probation reports that the state court revoked the defendant on April 10, 2018, following his arrest for the offense that eventually led to the federal charge. As noted in the PSR, the state court sentenced him to serve six months and two days—until October 12, 2018. Dkt. No. 42 at ¶30. The plaintiff served just over five months of that time, and was released September 21, 2018. Id. The charges in this case were filed on May 8, 2018, while he was serving that five-month sentence. Dkt. No. 1. He came back to federal court when he completed that state sentence, and although the formal federal detention order didn't issue until September 25, 2018, the BOP has credited the defendant starting September 22, 2018—the day after he completed the state revocation sentence.

The court sentenced the defendant a year ago. It cannot recall why, at the sentencing hearing, it said that defense counsel and his client had indicated that the defendant never was returned to state custody. There is no mention of that assertion in the defendant's sentencing memo, nor any motion of it in the sentencing hearing up to that point. It appears that the defendant was in the Dodge Correctional Institution at the outset of the case. Dkt. No. 3. As stated, Judge Joseph issued writs to have the defendant brought from Dodge Correctional Institution to Milwaukee for his final pretrial conference and his trial. Other than defense counsel's statement that the defendant never was returned to state custody—meaning, the court assumes, to a state prison—the court has no information about where the defendant was housed between his initial appearance and the day he returned to court for a bond/detention hearing.

The defendant has interpreted the exchange among the court, defense counsel and the probation officer as the court expressing its intent that the defendant should get credit against his federal sentence for any time that he was in the custody of the U.S. Marshal, as opposed to the custody of the Wisconsin Department of Corrections—regardless of whether the defendant received credit for that time against his state revocation sentence. That was not the court's intent. The defendant asked the court to impose a sentence of twenty-two months. The court declined that request, and imposed a sentence of twenty-eight months. It meant to impose a sentence of twenty-eight months. The discussion about how to word the language of the judgment related to the

fact that it is the Attorney General (acting through the BOP), not the court, who has the discretion to determine sentence credit. United States v. Walker, 917 F.3d 989, 993 (7th Cir. 2019) (citations omitted). The court perceived—wrongly, it appears—that the defendant was asserting that he wasn't going to get credit for the May 24, 2018-to-September 21, 2018 time against his *state* sentence because he hadn't been returned to a state prison to serve it. If the defendant had not gotten credit for that time against his state revocation sentence, the court wanted him to get credit for it against his federal sentence. But it was uncomfortable assuming that the defendant would not receive the credit on the state sentence, given that computation of sentencing credit is up to the BOP. It thought it was resolving that issue by stating that the BOP should give the defendant credit for "any time served in federal custody prior to the date of sentencing." Dkt. No. 47 at 2. By "time served in federal custody," the court meant time in custody that could be attributable to the federal charges, not time elapsed in a facility into which the federal law enforcement authorities placed the defendant.

Given this motion, the court will consider working its credit language differently in future orders of judgment. But it was not the court's intent to credit the defendant's federal sentence with time credited to his state sentence. Nor was the court thinking about the fact that it could not impose concurrent time because the defendant's state revocation sentence has concluded. The court simply wanted to make sure that the defendant got credit against *some*

sentence for the period between May 24, 2018 and September 25, 2018. He did, and so the court will deny the motion.

A final note: The court can only imagine that the defendant is under a great deal of stress, and experiencing fear and uncertainty right now. We are in an unprecedented time, and the fears and stress that everyone in the world is experience are heightening for a person in custody. The court can imagine that the defendant is scared for his own safety, and perhaps even more afraid for the safety of his family and loved ones. This order in no way means to trivialize or make light of that fear, and the court does not blame the defendant for wanting to be released as soon as possible. The court holds only that it did not intend what the defendant believes it intended in what it said at sentencing. The court sends every hope for the health and safety of the defendant and his family.

The court **ORDERS** that the defendant's motion to amend judgment is **DENIED**. Dkt. No. 55.

Dated in Milwaukee, Wisconsin this 16th day of April, 2020.

**BY THE COURT:**

______________________________
**HON. PAMELA PEPPER**
**Chief United States District Judge**